IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:15-CV-587-F

| | |
|---|---|
| FRANKLIN LEVI SESSION, ) | |
| ) | |
| Plaintiff/Claimant, ) | |
| ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| NANCY A. BERRYHILL, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-21, -23] pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Claimant Franklin Levi Session ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of his application for Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, it is recommended that Claimant's Motion for Judgment on the Pleadings be denied, Defendant's Motion for Judgment on the Pleadings be allowed, and the final decision of the Commissioner be upheld.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for SSI payments on May 13, 2013, alleging disability beginning January 29, 2013. (R. 16, 145-51). The claim was denied initially and upon reconsideration. (R. 16, 54-76). A hearing before an Administrative Law Judge ("ALJ") was held on January 27, 2015, at which Claimant, represented by counsel, and a vocational expert ("VE")

appeared and testified. (R. 16, 33-53). On March 4, 2015, the ALJ issued a decision denying Claimant's request for benefits. (R. 13-27). Claimant then requested a review of the ALJ's decision by the Appeals Council, which after incorporating additional evidence into the record, denied review on September 4, 2015. (R. 4-10). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling*

2

*Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 416.920a(e)(3).

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial

3

gainful activity since the application date. (R. 18). Next, the ALJ determined Claimant had the severe impairment of osteoarthritis of the right ankle. *Id.* However, at step three, the ALJ concluded this impairment was not severe enough to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* Prior to proceeding to step four, the ALJ assessed Claimant's residual functional capacity ("RFC"), finding Claimant has the ability to perform medium[1] work except he would need a cane or other assistive device over uneven turf. (R. 18-21). In making this assessment, the ALJ found Claimant's statements about his limitations not entirely credible. (R. 19). At step four, the ALJ concluded Claimant had no past relevant work. (R. 21). Nevertheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 21-22).

Claimant contends the ALJ erred by failing to engage in a function-by-function analysis. Pl.'s Mem. [DE-22] at 5-8.

## V. DISCUSSION

### A. The ALJ's RFC Analysis

An individual's RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. § 416.945(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. § 416.945(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5.

---

[1] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying objects weighing up to 25 pounds. If an individual can do medium work, he or she can also do sedentary and light work. 20 C.F.R. § 416.967(c).

4

In *Mascio v. Colvin*, the Fourth Circuit explained that S.S.R. 96-8p requires the ALJ to "'first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." 780 F.3d 632, 636 (4th Cir. 2015) (quoting S.S.R. 96-8p). The ruling further requires "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* (quoting S.S.R. 96-8p). "Only after such a function-by-function analysis may an ALJ express RFC 'in terms of the exertional levels of work.'" *Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016) (quoting *Mascio*, 780 F.3d at 636 (quoting S.S.R. 96-8p)). However, the Fourth Circuit has rejected "a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis." *Mascio*, 780 F.3d at 636. Rather, the court explained that "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (citation omitted).

Claimant argues that he has "several postural limitations" that were neither discussed by the ALJ nor included in the RFC determination and that despite "multiple postural functions" being contested the ALJ failed to conduct the requisite function-by-function analysis. Pl.'s Mem. [DE-22] at 6-7. Specifically, Claimant notes that his sister indicated on a third party function report that Claimant's ability to lift, squat, bend, stand, reach, walk, kneel, and climb stairs is limited by severe ankle pain (R. 182); Dr. Fernandez, a consultative examiner, indicated Claimant may have postural limitations for bending, stooping, and crouching due to his right ankle pain (R. 291); Claimant reported to his treatment provider that bending and standing were somewhat uncomfortable and he

had some discomfort in his lower back (R. 325); Claimant reported his ankle was extremely sensitive to pressure and cold (R. 403); and Dr. Horne, a state agency reviewer, determined Claimant can frequently but not continuously climb, stoop, kneel, crouch, and crawl as a result of his right ankle fusion (R. 72). Pl.'s Mem. [DE-22] at 6-7. Claimant concludes that this evidence supports some limitation on how long he can stand and how often he can bend, stoop, crawl, and kneel, as well as a limitation with regards to temperature and environment. *Id.* at 7. Claimant's contentions are without merit.

The ALJ concluded that despite Claimant's osteoarthritis of the right ankle he could perform medium work with the use of a cane or other assistive device on uneven turf. (R. 18). In reaching this conclusion, the ALJ thoroughly considered Claimant's testimony, the medical evidence of record, and the opinion evidence. (R. 19-21).

The ALJ noted that Claimant underwent a right ankle fusion with a bone graft in January 2012 at the Federal Medical Center in Butner, North Carolina ("FMC Butner") and that six months later Claimant had no pain in his ankle and had progressed to walking an hour and a half. (R. 19, 237-40, 274). Subsequent medical records from FMC Butner indicate Claimant was seen for other general complaints in the later half of 2012, such as an eye laceration and acid reflux, but there are no further complaints regarding his ankle. (R. 214-36).

The ALJ discussed the June 10, 2013 consultative evaluation of Dr. Fernandez. Claimant reported to Dr. Fernandez that he could walk for 60 minutes and stand for 60 minutes, had swelling in his ankle daily, his ankle pain was worse with standing, and he took Tylenol and BC powders for pain. (R. 20, 282). Claimant also reported that he last worked in May 2013 doing power washing. (R. 282). On examination Claimant had tenderness and swelling in his right ankle, but he was able

6

to walk down the hall and get on and off the exam table without assistance, had a steady gait but walked with a limp and leaned to the right, and required no assistive device. (R. 20, 284). Dr. Fernandez concluded that Claimant "may have postural limitations to bending, stooping, crouching, limited by his right ankle pain." (R. 284). The ALJ found Dr. Fernandez's opinion to be "vague" because it did not indicate specific limitations. (R. 20, 281-84). Dr. Fernandez's opinion not only offers no specificity with respect to any perceived limitations in bending, stooping, and crouching, but it is also speculative and, therefore, does not support additional RFC limitations. *See Brown v. Colvin*, No. 7:15-CV-157-RN, 2016 WL 1559141, at *7 (E.D.N.C. Apr. 18, 2016) (unpublished) (concluding postural limitations assessed by physician in "general terms" that failed to "denote the frequency or duration [the claimant] could perform" the activities lacked supportability).

The ALJ also considered medical records from the Department of Veterans Affairs (the "VA") from July 2013 through May 2014. (R. 20). The ALJ noted that in July 2013 Claimant had a callus on his right great toe and trace edema of the right ankle. (R. 20, 301, 309-11). Claimant was prescribed an anti-inflammatory and capsaicin cream for his ankle pain. (R. 311). The records also show that Claimant's altered gait caused the callus buildup, but Claimant cancelled appointments in August 2013 and November 2013 and did not reschedule. (R. 303). In January 2014, Claimant presented with a recent increase in lower back pain at the site of an old gunshot wound and reported bending and standing were "somewhat uncomfortable." (R. 325). Claimant was not interested in physical therapy, injections, or pills, was given a trial of topical lidocaine, and was encouraged to walk daily. (R. 327). In March 2014, Claimant returned with continued complaints regarding his lower back pain and the treatment provider indicated Claimant "did not like topicals, apap, nsaids, re[fu]ses injections, p.t. or pain mgt class." (R. 322). It was noted that Claimant declined all

7

conservative treatment and the treatment provider thought opioids were not appropriate. (R. 324). In May 2014, Claimant was treated for a wrist injury. (R. 319-21). Claimant received no further treatment for his ankle at these visits. In records submitted to the Appeals Council for the first time, a VA treatment note from March 2015 reflects that Claimant received a consultative examination in the orthopaedic surgery clinic and reported "some mild discomfort and swelling after being on his feet for prolonged periods of time," but the doctor determined Claimant's fusion was "well-healed and hardware looks good," recommending only continued conservative treatment and stating there were "no orthopaedic needs at this time." (R. 362-63).

The ALJ next considered the RFC determination of Dr. Horne, the state agency reviewer, who concluded Claimant could perform medium work with a limitation to frequent climbing, stooping, kneeling, crouching, and crawling. (R. 71-73). The ALJ afforded this opinion significant weight and noted that the hearing evidence and updated records supported the exertional limitations. (R. 21). While the ALJ adopted the medium exertional limitation, he did not incorporate the postural limitations. However, as the Commissioner points out, incorporating the limitations to frequent climbing, stooping, kneeling, crouching, and crawling would not preclude performance of the occupations the ALJ determined Claimant could perform. The ALJ determined Claimant could perform the occupations of kitchen helper, hand packager, and laundry laborer. (R. 22). The Dictionary of Occupational Titles ("DOT") provides that kitchen helper requires no climbing, kneeling, or crawling, but frequent stooping and crouching, DOT 318.687-010; hand packager requires no climbing, stooping, kneeling, crouching, or crawling, DOT 920.587-018; and laundry laborer requires no climbing, kneeling, crouching, or crawling, but occasional stooping, DOT 361.687-018. Thus, none of these occupations require more than frequent climbing, stooping,

8

kneeling, crouching, and crawling, and any error in this regard is harmless. *See Hicklin-Jones v. Colvin*, No. 3:14-CV-584, 2015 WL 8958542, at *3 (W.D.N.C. Dec. 15, 2015) (unpublished) (concluding failure to include environmental restriction was harmless in light of the particular jobs identified by the VE, which required no exposure to environmental conditions).

Finally, the ALJ noted Claimant's testimony that he can stand for 45 minutes before his ankle swells and that he must elevate his ankle for two to three hours daily. (R. 19). Claimant also relies on his reports to treatment providers that bending and standing were somewhat uncomfortable, he had some discomfort in his lower back (R. 325), and that his ankle was extremely sensitive to pressure and cold (R. 403). However, the ALJ found Claimant's testimony not entirely credible, noting that Claimant had no significant anatomical structural deformities that might be expected based on the degree of pain alleged; had not required aggressive measures for relief such as the use of steroids, epidural injections, use of a TENS unit, or participation in a pain management program; and was treated with only over-the-counter medication for his symptoms. (R. 19, 21). The ALJ concluded Claimant's conservative treatment regimen indicated his symptoms were "not as intractable as alleged," further noting that no restrictions had been recommended by any treating doctor. (R. 21). The ALJ appropriately considered the nature of the treatment Claimant received, particularly in light of the scant medical evidence that Claimant's functional ability was limited by his ankle impairment or back pain beyond the RFC determined by the ALJ. *See Dunn v. Colvin*, 607 F. App'x 264, 275 (4th Cir. June 1, 2015) (unpublished) ("[I]f all that the claimant needs is conservative treatment, it is reasonable for an ALJ to find that the alleged disability is not as bad as the claimant says that it is."); *Richardson v. Colvin*, No. 4:14-CV-00125-FL, 2015 WL 5725546, at *6 (E.D.N.C. Aug. 11, 2015) (unpublished) (finding conservative treatment lends little support to

9

claims of debilitating symptoms), *adopted by* 2015 WL 5737613 (E.D.N.C. Sept. 30, 2015). The postural limitations reported by Claimant's sister (R. 182) are likewise inconsistent with the record evidence detailed above. With respect to Claimant's complaints of sensitivity to cold, he was given a neoprene sleeve to help retain heat in cold weather (R. 402), and it was noted in January 2015, in records first provided to the Appeals Council, that Claimant was not wearing his neoprene brace as instructed (R. 385).

Despite the ALJ's failure to conduct a function-by-function assessment, the ALJ's RFC analysis does not frustrate meaningful review. The evidence cited by Claimant does not support additional restrictions on walking and standing, and substantial evidence supports the ALJ's determination that Claimant can perform medium work. *See Richardson v. Berryhill*, No. 5:16-CV-83-BO, 2017 WL 605287, at *2 (E.D.N.C. Feb. 14, 2017) (unpublished) (distinguishing *Mascio* and finding remand unnecessary despite the ALJ's failure to conduct a function-by-function assessment where the ALJ sufficiently addressed the relevant limitations and functional capacities). To the extent the ALJ erred in failing to incorporate the postural limitations suggested by Dr. Horne, such error was harmless where those additional limitations would not preclude the occupations the ALJ determined Claimant can perform. Accordingly, the ALJ's failure to conduct the function-by-function analysis does not require remand in this case.

## VI. CONCLUSION

For the reasons stated above, it is RECOMMENDED that Claimant's Motion for Judgment on the Pleadings [DE-21] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-23] be ALLOWED, and the final decision of the Commissioner by upheld.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each

of the parties or, if represented, their counsel. Each party shall have until **March 14, 2017** to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. Any response to objections shall be filed within **7 days** of the filing of the objections.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Wright v. Collins*, **766 F.2d 841, 846-47 (4th Cir. 1985).**

SUBMITTED, this the 28th day of February 2017.

_____
Robert B. Jones, Jr.
United States Magistrate Judge

11